## The Inhab. of MILO vs. The Inhab. of KILMARNOCK.

A minor, illegitimate and *non compos mentis,* was held to be incapable of gaining a settlement in a town by residing therein *at the time of its incorporation,* under the provisions of *stat.* of 1821, *ch.* 122 — its mother living at the time, and there having been no emancipation.

The words, " all persons," in the statute, must be regarded as applying to those persons who are legally capable of gaining a settlement in their own right in any *other* mode.

THIS was *assumpsit* for expenses incurred by the plaintiffs in the support of *Lucinda Boobar,* a pauper, and was submitted for

the decision of the Court upon the following agreed statement of facts.

The pauper is the illegitimate and *non compos* child of *Hannah Boobar*, and was born in 1818, in an unincorporated place, where her mother then lived with her father, *Benjamin Boobar*, which place was, in 1824, incorporated into a town called *Kilmarnock*, *Hannah* at that time being 21 years of age. At the time of the birth of the pauper, the mother had no settlement in any incorporated town or plantation in the State. In 1824, immediately after the incorporation of *Kilmarnock*, *Benjamin Boobar*, with his family, including his daughter *Hannah* and the pauper, moved into the town of *Milo*, where they have ever since resided, neither of them receiving supplies as paupers from any town or place until *September*, 1833 ; since which time the pauper has been supported by the town of *Milo*.

*Kent*, for the plaintiffs, contended that the pauper gained a settlement in *Kilmarnock* under the 5th mode prescribed by *stat.* of 1821, *ch.* 122, which is in these words, " all persons dwelling and having their homes in any unincorporated place, at the time when the same shall be incorporated into a town, shall thereby gain a legal settlement therein." Her being *non compos* at the time does not prevent the operation of the statute in regard to her. *Fairfax* v. *Vassalborough*, cited in *Hallowell* v. *Gardiner*, 1 *Greenl.* 96. Nor her being a minor, *Sidney* v. *Winthrop*, 5 *Greenl.* 123 ; *Lubec* v. *Eastport*, 3 *Greenl.* 220.

The settlement thus gained has never been lost. For though the pauper, has resided in *Milo* five successive years with her mother, she could not thereby gain a derivative settlement under the mother. *Petersham* v. *Dana*, 12 *Mass.* 429 ; *Boylston* v. *Princeton*, 13 *Mass.* 381 ; *Sidney* v. *Winthrop*, 5 *Greenl.* 123.

She could not gain a new settlement in her own right, because being an infant and *non compos* she could not be considered as capable of exercising any volition or will in changing her residence.

*Starret*, for the defendants, cited *Hallowell* v. *Gardiner*, 1 *Greenl.* 96 ; *Somerset* v. *Dighton*, 12 *Mass.* 382 ; *Biddeford* v. *Saco*, 7 *Greenl.* 270 ; *Sidney* v. *Winthrop*, 5 *Greenl.* 123 ; *Lubec* v. *Eastport*, 3 *Greenl.* 220 ; *Wright* v. *Wright*, 2 *Mass* 10 ; *Sumner* v. *Sebec*, 3 *Greenl.* 223.

PARRIS J. — By statute, *chap.* 122, *sect.* 2, it is provided that illegitimate children shall follow and have the settlement of their mother, at the time of their birth. This is the precise language of the statute of *Massachusetts* upon the same subject, in full force at the time of the organization of the government of this state. *Statute* of *Massachusetts* of 1793, *chap.* 34, *sect.* 2. And it has been judiciously settled that the meaning of this provision is, that the settlement which the mother had at the time of the birth of the child shall be the settlement of the child until it shall gain a new settlement by its own act; and that illegitimate children do not follow a new settlement acquired by the mother. *Boylston* v. *Princeton,* 13 *Mass.* 381.

At the time of the birth of *Lucinda Boobar,* the pauper, her mother had no settlement in *Kilmarnock,* and consequently the pauper has no *derivative* settlement there. — Did she gain a settlement in her own right in *Kilmarnock,* in the fifth mode prescribed by our statute, *viz.* by dwelling and having her home there when it was incorporated into a town ? — The language of the statute is sufficiently broad to include her, but it is not more general than the subsequent part of the same section, which provides that any person resident in any town at the date of the passage of the *Act,* 21st *March,* 1821, who has not within one year previous to that date received support or supplies from some town as a pauper, shall be deemed to have a settlement in the town where he then dwells and has his home. This Court has decided in *Biddeford* v. *Saco,* 7 *Greenl.* 270, that an illegitimate child living with its mother and composing part of her family was incapable of gaining a settlement by virtue of this provision. It has also been decided in *Hallowell* v. *Gardiner,* 1 *Greenl.* 93, that by the words *all persons,* in the statute of *Massachusetts* of 1793, *ch.* 34, in the *ninth* mode of gaining a settlement (which is the same language used in our statute prescribing the *fifth* mode of gaining a settlement) are intended only those persons, who are legally capable of gaining a settlement, in their own right, in any *other* mode.

A *legitimate* child, while a minor and during the life of its parents, could gain no settlement *in its own right* by residing in a town at the time of its incorporation, or on the 21st of *March,*

1821, unless such child was emancipated. *Sumner* v. *Sebec,* 3 *Greenl.* 223. Such minor would gain only a derivative settlement through its father, and yet the language of the statute *" all persons* dwelling and having their homes," &c. *" Any person* resident in any town," &c. is sufficiently broad to include them. But an illegitimate child could gain *no derivative* settlement from its mother subsequent to that gained at its birth ; and unless emancipated can gain none in its own right. *Biddeford* v. *Saco, ut supra.* *Lucinda* was not emancipated. Her mother had the rightful custody of her person ; was bound to support and maintain her, and she was, of course, a part of her mother's family. *Wright* v. *Wright,* 2 *Mass.* 110. And the mother was entitled to all her services. *Somerset* v. *Dighton,* 12 *Mass.* 333.

The cases cited by the plaintiffs' counsel, are all cases where the pauper was emancipated. In *Sidney* v. *Winthrop,* 5 *Greenl.* 123, the mother of the pauper was *non compos,* and it is apparent that the court considered the pauper as emancipated. In *Lubec* v. *Eastport,* 3 *Greenl.* 220, the pauper was a minor and both parents were dead, and the court held that to be a case of emancipation. *Fairfax* v. *Vassalborough,* 1 *Greenl.* 96, *note,* was also a case where both parents were dead. In *Wells* v. *Kennebunk,* 8 *Greenl.* 200, the court considered the pauper emancipated. In *Leeds* v. *Freeport,* 1 *Fairf.* 356, both parents of the pauper were dead previous to 1821; he was a minor and had a derivative settlement in *Freeport,* but was dwelling with his master in *New Gloucester,* under indentures, on the 21st *March,* 1821. The Court considered him as emancipated, and that he gained a settlement in his own right ; and such would have been the decision in *Sumner* v. *Sebec,* if the proof had shown an emancipation of the pauper.

As to the power of minors to acquire a settlement in their own right, we are not aware of any distinction between legitimate and illegitimate. Unless emancipated, neither have that power, either by dwelling and having their home in an unincorporated place when the same is incorporated into a town, or by having been resident in any town on the 21st *March,* 1821.

It was urged in argument, that it was the intention of the Legislature to give a settlement, in some one of the modes speci-

fied, to all persons residing within the State, or who might be born within it. If such was the intention, it has failed, as this Court has decided that the provisions of the pauper laws do not extend to plantations. *Blakesburg* v. *Jefferson*, 7 *Greenl.* 125 ; *Means* v. *Blakesburg, ibid,* 132.

We repeat what we said in *Biddeford* v. *Saco,* "Where the mother's settlement was, at the time of the birth of *Lucinda,* is an immaterial inquiry in this case," inasmuch as it was not in *Kilmarnock.*

If she had no settlement in the State, then her illegitimate child can have none until it is capable of acquiring one in its own right ; and as, in the meantime, the mother will have the care and custody of the child, as natural guardian, there will be no occasion for a separation of the child from the parent. If the mother gain a settlement within the State, she will be entitled to support under the 3d *sect.* of *stat., chap.* 122. If the child do not gain a settlement, it will be entitled to support under the 18th *sect.* of the same statute. We are all of opinion that, upon the facts agreed, the settlement of the pauper was not in *Kilmarnock.*